# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

|  |  |  |
|---|---|---|
| J.H. and C.H., individually, and as Parents and Natural Guardians on behalf of J.E.H., a Minor, | : : : : | Case No. 22-439 |
| *Plaintiffs*, | : : | **JURY TRIAL DEMANDED** |
| v. | : : | |
| Marinette School District, | : : | |
| *Defendant.* | : : | |

## <u>COMPLAINT</u>

### PRELIMINARY STATEMENT

1. This action is brought under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("Title II"); the Reconstruction Civil Rights Act, 42 U.S.C. § 1983; and state common law.

2. This Complaint seeks compensatory damages, attorneys fees, and costs for the injuries to Plaintiff, J.E.H.'s person, discrimination against J.E.H. based on his disabilities, violations of J.E.H.'s rights under the United States Constitution and Federal and state statutes, and common law tort, all arising in connection with or as a result of an incident that occurred on April 9, 2019 where Student sustained a lacerated penis at school.

### JURISDICTION AND VENUE

3. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 12131 *et seq.*. Jurisdiction is based upon 28 U.S.C. §§ 1331 and the aforementioned statutes.

4.  Plaintiffs further invoke the supplemental jurisdiction of this Court under 28 U.S.C. § 1367(a) to adjudicate claims arising under state law.

5.  Venue in this District is proper under 28 U.S.C. § 1391(b), as all or virtually all of the events giving rise to the Complaint occurred within the territorial limits of the Eastern District of Wisconsin.

**PARTIES**

6.   Plaintiffs J.H. and C.H. (hereinafter, "Parents") are adult individuals and citizens of the State of Wisconsin. Parent, C.H., resides and, at all times relevant to this Complaint, has resided within the boundaries of the Marinette School District. Parents bring this claim on behalf of minor Student.

7.  Plaintiff J.E.H. (hereinafter, "Student") is the minor son of Plaintiffs, J.H. and C.H., and a citizen of the State of Wisconsin and the United States of America. Student resides and, at all times relevant to this Complaint, has resided within the boundaries of the Marinette School District.

8.  Defendant Marinette School District (hereinafter, "District") is a school district created and existing under the laws of the State of Wisconsin, with its office located at 2139 Pierce Ave, Marinette, WI 54143. Defendant Marinette is a "public agency," within the meaning of Title II. Additionally, Marinette is a "local educational agency" responsible for providing Student with an appropriate education, related services and specially designed instruction.

**FACTS**

9.  Student is a minor who is currently 13 years old. Student has unique abilities and significantly rare medical conditions which require Student to receive special education, related services, and accommodations to access educational opportunities.

2

10. Student entered the District as a kindergarten level student. Student was born with several significant disabilities and unique health conditions, which the District was aware of upon enrollment. These medical conditions include, *inter alia,* epilepsy, frequent aspiration, neurogenic bladder, Moebius Syndrome, Oromandibular Limb Hypogenesis and Eosinophilic Esophagiti.

11. Prior to school age, Student had received extensive outside therapies and medical services including speech and physical therapy services. The District was aware that Student received these therapies and services.

12. The District was aware of all of the significant medical needs of Student upon enrollment. Additionally, via their obligations as Student's local educational agency, responsible for providing Student with a Free Appropriate Public Education, they were required to conduct evaluations of Student's needs. Between kindergarten and the 2020-2021 school year, the District completed multiple evaluation reports confirming and acknowledging the extent and complexity of Student's needs. This information was shared with all relevant members of Student's educational team, including all staff that was tasked with working with Student in the school setting.

13. The District also collected information from outside medical providers to gain understanding of Student's medical needs in conjunction with using their own school based experts to evaluate Student's needs.

14. Student communicates non-verbally and requires a g-tube for hydration. Student is able to orally consume pureed food.

15. As a result of Moebius Syndrome and other combined health conditions, Student has decreased strength/endurance, gait abnormality and significantly decreased mobility.

16. Student requires constant adult supervision and assistance by trained staff for transfers and mobility support.

17. Student requires trained adult assistance and transfers for toileting, daily living tasks, changing of diapers and clothing.

18. Student requires specially accommodating equipment to assist with mobility, toileting and changing of diapers. This includes, but is not limited to, a changing table, lift chair, and wheelchair.

19. Student does not have typically formed hands and feet. Student's unique limbs make mobility difficult but still possible as he is able to stand and use his limbs for limited gross and fine motor activities. The limited motor skills make it so Student is dependent upon Staff for assistance with most daily living tasks and navigation of the school environment.

20. Student's special needs have required multiple complex surgeries with long recovery times. These conditions requiring surgery, such as hip surgeries, are exacerbated by inappropriate positioning and transfers.

21. The District was aware of the heightened risk of injury to Student during transfers.

22. Parents have always been forthcoming and open to sharing with the District Student's medical needs and outside Doctor's recommendations. Parents participated in meetings at least every school year to update the school staff on any new developments relating to Student's medical needs.

23. Student's needs were described in yearly Individualized Education Plans which were shared with all staff working with Student.

4

24. Due to these complex needs, when Student was physically attending school prior to the 2020-2021 School Year, Student was only offered limited in class opportunities and a shorter schedule than most children. Student's schedule was condensed to only partial school days.

25. Prior to the 2020-2021 School Year, Student was never offered home services when instructional time was missed due to medical needs.

26. Despite Student's complex medical needs and unique abilities, Student is able to make progress in, *inter alia,* mobility, communication, nutrition, physical therapy, academics, occupational therapy and speech. Prior to the 2020-2021 school year, Student was never provided with proper services to tap into his potential and ability to make progress.

27. Due to the failures of the past in providing an appropriate public education, Plaintiffs previously filed a Due Process Complaint under the Individuals with Disabilities and Education Act (IDEA) on April 1, 2020. This Complaint addressed the District's failure to provide a Free Appropriate Public Education to Student.

28. The previous matter was resolved via confidential settlement in August of 2020.

29. Via the settlement the District and Plaintiffs agreed to "fully preserve any claims, including state and federal claims, relating to any bodily injury to the Student that occurred on April 9, 2019."

30. The instant Complaint seeks damages only relating to the incident on April 9, 2019 and the actions/damages sustained thereafter as a result of the injury sustained on April 9, 2019.

31. On April 9, 2019, Student came home from school with a note in his backpack indicating that the staff at school had noticed blood in his diaper, after experiencing a non-disclosed injury.

5

32. C.H. immediately inspected Student upon receipt of the note and discovered a deep cut across Student's penis. The cut was across the entire width of the penis, deep enough to expose deep tissue beneath the cut.

33. C.H. took Student immediately to seek medical attention. C.H. reports that the injury was so severe that the tending physician could hardly stomach looking at it.

34. Prior to being sent home with the note in the backpack. No one at the school had indicated to Parent via phone call or any other mode of contact that Student sustained such an injury. Even the note received never mentioned the cause of the bleeding or extent of the injury.

35. The District staff never sought the care of the school nurse nor did they call for any emergency medical attention.

36. Student is primarily non-verbal and was unable to tell Parent that such an injury had occurred or the source of the injury.

37. Knowing that Student was unable to communicate the details of the incident, the District staff made a deliberate decision to send only a note home in an attempt to conceal the significance of the injury to Student's genitals.

38. This discriminatory and concealatory action caused Student to endure additional unnecessary and avoidable pain and suffering that could have been avoided had the District staff reacted with appropriate care and response.

39. The District conducted a purported "Comprehensive Review" of the incident which was written by Cynthia Russell Smith, Director of Student Services on April 17, 2019.

40. The review consisted of interviews with the two educational associates working in the room, the District nurse (though no information made it into the report), facilities Director,

review of security camera footage, contact with police, District Policy review, and a meeting with the Parents.

41. According to the report, on April 9, 2019, Student arrived at school at approximately 11:00 am. He was first changed at approximately 12:30 pm. At this time there was no reported blood in the diaper. The report is contradictory as it stated that "he was wet" but then later says "he did not urinate." It is unclear what the wetness was caused by if not urine.

42. According to the report, the blood was discovered during a subsequent changing at 2:40 by a second educational associate. From the last changing at 12:30 until the changing at 2:40 it was reported that Student was in his chair and/or on the floor playing with legos supervised by the special education teacher and supervised by an educational assistant. Just prior to 2:40, Student was brought to the bathroom in his wheelchair with only a single educational associate. The staff member stood him up, took his diaper off, put him on the "wheely," slid him over the toilet and strapped him into the wheely. Then, she put him on the mat when he was done. This is when she noticed blood above his penis by his abdomen. The report claims that she "applied pressure to what looked to be a scratch." She then went back to the classroom and wrote a note on a piece of loose-leaf paper indicating that blood was noticed in the diaper.

43. No staff member noticed any blood in Student's diaper earlier in the day, or during previous changing. Student never left the school building and there were no third party individuals who entered the classroom during this time prior to the incident or interacted with Student without supervision of those interviewed for the report. According to a purported video review, no concerning actions were made by Students in the classroom.

7

44. Although a video was purportedly reviewed during the incident investigation, and police were contacted, the video was destroyed. Parents were never provided with a copy of the video despite requests to retain this critical evidence by Parents and Parents' counsel.

45. According to the report, no call was made to Parent, and no nurse visit was made.

46. The report made the following conclusion, "the accident occurred while transferring [Student] from the toilet to the changing table." They concluded that it was an "inadvertent mishap."

47. The report concluded that staff thought a note in the backpack was "reasonable" considering that is how communication with Parent had regularly occurred, but "we understand that this is something that now needs to be reviewed - and that a different protocol may need to be developed and followed."

48. The District never treated this as an emergency medical situation, and instead decided to communicate with Parent how they normally did with regular day-to-day updates.

49. Under "Recommendations" the report made the following suggestions moving forward:

    a. People are requested to remove their badges when toileting students. (One of the theories was that a name badge cut Student).

    b. Review (and revise where appropriate) District emergency policy

        i. Nurse contact when there is an injury in genital area

        ii. Parent be contacted immediately via phone call should something unusual occur

    c. Review of adaptations with physical space

        i. Installation of a privacy curtain in designated bathroom

        ii. Walkie talkie in designated bathroom

8

d. Due to the circumstances of this case, we will discuss with parents (via IEP) what changes of routine may be appropriate. May put some things in place for future.

    i. Two people accompany Student when he is in designated restroom. Use of privacy curtain so the staff can remain in the bathroom

    ii. Follow medical emergency protocol - included in Student's IEP

    iii. Walkie talkie in designated bathroom so staff can communicate immediately while toileting.

50. The report references two different protocols, "District emergency policy" and "medical emergency protocol - included in [JEH's] IEP." Neither of the educational associates or the special education teacher reported following any/either of these protocols.

51. Prior to the incident, none of the staff were appropriately trained in emergency policy or medical emergency protocol. The protocols/policies were wholly defective and/or not followed.

52. Prior to the incident, none of the staff were appropriately trained in safe transfer of Student to avoid likely injury to Student.

53. Prior to the incident and when the incident occurred, the District was using a changing table that was not the appropriate height and specifications for the Staff to use when changing Student. The District has later admitted that the changing table was not appropriate.

54. Prior to the incident, the District was aware that the staff responsible for changing Student received minimal training and was not physically able to meet the demands of transferring Student without the assistance of other adults.

55. Prior to the incident, the District never trained staff on identifying and responding to trauma/distress of non-verbal individuals, nor did the District ever create a plan to respond to and recognize when Student was in distress and/or needed emergency attention.

56. Prior to the incident, the District staff was aware, or should have been aware, of how Student communicated pain and distress and should have been able to identify these signs of distress.

57. Directly following the incident, Student showed obvious signs of discomfort and distress. This was reported to Parent when contacted about the incident. This distress was also visible on the now destroyed video. However, in the "Comprehensive Review" completed by the District, all three staff completely changed the story and stated that "there were no red flags that anything was wrong." Similar statements were made to police. These statements were not true.

58. These contradictory statements, the insufficient review of the incident, the destroyed video, the decision to only put a note in the backpack, and the decision to not seek medical care were all deliberate decisions made because of Student's inability to verbally communicate how the injury occurred and the extent of pain he endured. Had Student been able to communicate verbally, the coverup which followed the incident would not have occurred and different protocols would have been taken to alert Parents and provide adequate medical care.

59. Not only did the District violate Student's rights in response to the injury, several failures by the District were the direct and foreseeable cause of the injury sustained on April 9, 2019.

60. The District was fully aware of the accommodations Student required when transferring for changing, and performing changes in the bathroom. The District was also aware that they did not have the appropriate staff, training for staff, and equipment to perform transfers and changes. Further, via his medical history, the District had been warned of the dangers associated with insufficient practices in transferring and changing Student.

61. The District ignored all of these deficiencies which were a direct and proximate cause of the injury sustained by Student.

62. Further, the District was aware that Student required an individualized medical emergency plan. This was never implemented, and staff never received proper training on these medical/emergency protocols.

63. Knowing these deficiencies and what accommodations could cure them, the District took the affirmative act of placing Student in certain danger by assigning the deficient staff to Student without the appropriate tools/training to dispatch of their duties to Student.

64. After the incident, Student underwent treatment which included followup visit with a physician and application of antibiotics to prevent infection.

65. Parent reports that after the incident, Student had lost trust to allow adults to go near the region of the injury. This significantly impacted Student's ability to receive care from adults to maintain sanitary conditions.

66. This lack of trust in adults also hampered Student's ability to receive therapies, medical care and educational benefits. The trauma has negatively impacted Student's development and left lasting traumatic psychiatric damage.

67. Additionally, Parent reports that to this day Student still has scar tissue in the area of injury and discoloration. It is expected that these cosmetic genital injuries are permanent.

68. Following the incident, Student missed many months of instruction. The missed instructional time as it relates to the provision of FAPE was settled via confidential settlement, but it has also caused other recoverable damages related to Student's psychological and physical wellbeing and development.

69. What followed the incident was multiple years of meetings to discuss safety strategies and programming for Student moving forward. Parents have been diligent in exhausting remedies outside of the instant venue via collaboration with the District and previously through the administrative process prior seeking monetary relief in the instant Complaint.

70. Eventually, because Student's safety was compromised at school and the District was unable to ensure appropriate accommodations to keep Student safe, the District has since been educating Student in the home environment where Student's daily home caregivers can be present during therapies and instruction.

71. Via the instant Complaint, Plaintiffs are not challenging whether the current provision of educational services in the home constitutes a free appropriate public education, nor are they seeking relief for any of the missed instructional time and failures to provide a FAPE. They are also not seeking for the Court to order any changes to Student's educational services or accommodations.

72. However, the instruction in the home is currently necessary only due the incident in April of 2019. Had this incident not occurred, there would have been no disruptions in programming or drastic changes in placement.

73. The incident in April of 2019 and the failures that preceded and followed have completely altered Student's educational path and hindered his physical, mental, and emotional development in addition to causing significant pain and suffering, both physically and mentally.

**CAUSES OF ACTION**

**Count I**

**Discrimination Based on Disability Under Title II**

74. Plaintiffs repeat and reallege each and every allegation set forth in preceding paragraphs of this Complaint.

75. By its aforementioned acts and omissions the District:

    a. excluded Student from participation in, and denied him the benefits of, a service, program or activity made available to others;

    b. denied him the opportunity to participate in or benefit from an aid, benefit, or service on a basis that is equal to, and as effective as, that provided to others; or

    c. provided him with an aid, benefit or service that was not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

and thereby discriminated against Student on the basis of his disabilities.

76. The District discriminated against Student in violation of 28 C.F.R. § 35.130(b)(1).

77. In their acts and omissions described above, the District acted intentionally or with deliberate indifference to, and wanton disregard of, the health, safety and proper education of Student.

78. In their acts and omissions described above, the District acted intentionally when discriminating against Plaintiffs.

79. WHEREFORE, Plaintiffs demand judgment against the District as follows:

a. Awarding Plaintiffs compensatory and consequential damages; and

b. Awarding Plaintiffs their attorneys' fees, expert fees and costs.

## Count II

## Intentional Disability Harassment Title II

80. Plaintiffs repeat and reallege each and every allegation set forth in preceding paragraphs of this Complaint with the same force and effect as though each was fully set forth herein.

81. The District's response and cover up of the incident on April 9, 2019 was undertaken principally on the basis that Student was a disabled Student who could not communicate verbally to report the incident or call for help.

82. Such abuse constitutes harassment on the basis of a disability.

83. The incident, the failures leading up to the incident, and the coverup/lack of response, were so severe that they altered the condition of Student's education and created an abusive educational environment that Student is no longer able to attend.

84. The opportunities for the aforementioned harassment were created by the denial to Student, of the aids, services, benefits, accommodations and protections to which Student was entitled under Title II and other federal and state laws. The proper provision of such aids, services, benefits, accommodations and protections would have prevented or mitigated the harassment. The District was aware of the services, aids, protections and accommodations Student required to avoid injury and deliberately decided to not provide these protections. By Doing so, the District created an educational environment where Student was at great risk of injury and abuse - accidental or intentional.

85. In their acts and omissions described above, the District acted intentionally or recklessly, with deliberate indifference and wanton disregard to the health, safety and proper education of Student.

86. WHEREFORE, Plaintiffs demand judgment against the District as follows:

a. Awarding Plaintiffs compensatory and consequential damages; and

b.  Awarding Plaintiffs their attorneys' fees, expert fees and costs incurred.

**Count III**

**42 U.S.C. § 1983, Deprivation of Due Process Under the Fourteenth Amendment:**
***Unconstitutional Custom, Policy or Practice***

87. Plaintiffs repeat and reallege each and every allegation set forth in preceding paragraphs of this Complaint with the same force and effect as though each was fully set forth herein.

88. Among the historic liberties protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution is the right of a citizen to be free from unjustified intrusions on personal security.

89. Student is a United States citizen.

90. The District maintained a policy, practice or custom of providing severely disabled, or so-called "low functioning," children, and Student in particular, with minimal or no instructional attention and relegating such children to an unofficial program of rudimentary custodial care for less time during the day than non-disabled or less disabled peers. They did so while maintaining emergency and safety policies that were disadvantageous to the lowest functioning students such as Plaintiff, and in doing so, knowingly put such children at greater risk of injury and less likelihood to receive appropriate care in emergency situations.

91. The District maintained a policy, practice or custom of permitting disabled students, and Student in particular to endure significant injury to his genital area without remedial intervention if such disabled student was not capable of reporting his or her injury to appropriate caregivers or authorities.

92. The District maintained a policy, practice or custom of refraining from reporting the injuries to state or other authorities when they believed such injury or neglect could be concealed.

15

93. The District maintained a custom, practice or usage that communicated condonation or authorization of the behavior by the Staff leading up and following the April 9, 2019 incident. The condonation was confirmed in writing and verbally.

94. The District had final policymaking authority with respect to the identified policy, practice or custom; ratified a subordinate's wrongful act in respect thereof; or had actual knowledge of the wrongful act and failed to take corrective action in respect thereof to avoid the damages incurred by Plaintiff. All individuals involved in the incident acted under direct authority of the District as policymaker.

95. In their acts and omissions described above, the District acted under color of state law.

96. Throughout the period of the acts and omissions of the District described in this Count and each other Count herein alleging a violation of 42 U.S.C. § 1983, Student's Constitutional right of freedom from unjustified intrusions on his personal security was well established, and any reasonable person in the position of each such Defendant would have known that such acts and omissions were substantially likely to violate Student's Constitutional rights.

97. By their acts and omissions described above, the District and School Staff acted intentionally or recklessly, with deliberate indifference to, and wanton disregard of, the health, safety and proper education of Student. Their behavior would shock the conscience of any reasonable person.

98. As a direct and proximate result of the unconstitutional policies, practices and customs described above, Student has endured and will continue to endure physical pain and psychological and emotional suffering, including, but not limited to, post-traumatic stress, fear, and developmental delays.

99. As a further direct and proximate result of the unconstitutional policies, practices or customs described above, Student has suffered and will continue to suffer a loss of life's pleasures.

100. WHEREFORE, Plaintiffs demand judgment against the the District as follows:

a. Awarding Plaintiffs compensatory and consequential damages; and

b. Awarding Plaintiffs their attorneys' fees and costs as permitted under 42 U.S.C. § 1988.

<u>**Count IV**</u>
**42 U.S.C. § 1983, Deprivation of Due Process Under the Fourteenth Amendment:**
***Special Custodial Relationship***

101. Plaintiffs repeat and re-allege each and every allegation set forth in preceding paragraphs of this Complaint with the same force and effect as though each was fully set forth herein.

102. The District took affirmative actions to place Student in a custodial arrangement, including by, *inter alia*,

a. formulating or implementing IEPs that purported to provide for Student's safety and personal care;

b. discharging their statutory obligations to provide services to Student through an arrangement with related service providers and support staff;

c. assigning the actual -- and virtually sole -- responsibility for Student's feeding, toileting, dressing and other personal care to educational associates;

d. instructing the educational associates, directly and indirectly, to undertake specific personal care tasks for Student, in the areas of feeding, toileting and dressing, that isolated Student from interaction with and supervision by education professionals who could have properly protected Student from harm;

e. making continuing representations to Parent, both explicit and implicit, that such individuals were adequately safeguarding Student's physical health and safety while he was at school.

17

103.    The District left Student without a reasonable means of self-protection and without any practical ability to avoid and report injuries suffered while under the supervision of the District staff.

104.    The District knew of Student's medical condition and physical limitations; knew that Student was helpless to protect himself from certain physical injuries or communicate his distress to persons who could help him when injuries occurred; and knew or should have known of the grave risks to Student's health and safety created thereby and by the other facts alleged in this Complaint.

105.    The District had actual knowledge of dangerous conditions that could have and actually did cause harm to the Student.

106.    The District failed to protect Student despite their obligations to do so.

107.    In their acts and omissions described above, the District and staff acted under color of state law.

108.    In their acts and omissions described above, the District acted intentionally or recklessly, with deliberate indifference to, and wanton disregard of, the health and safety of Student. Their behavior would shock the conscience of any reasonable person.

109.    As a direct and proximate result of the special custodial relationship established by the District and the breach of their attendant obligations to protect Student from harm, Student has endured and will continue to endure physical pain and psychological and emotional suffering, including, but not limited to, post-traumatic stress, fear, and developmental delays.

110.    As a further direct and proximate result of the special custodial relationship and failure to protect Student as described herein, Student has suffered and will continue to suffer a loss of life's pleasures.

111.    WHEREFORE, Plaintiffs demand judgment against the District as follows:

a.  Awarding Plaintiffs compensatory and consequential damages; and

b.  Awarding Plaintiffs their attorneys' fees, expert fees and costs incurred as permitted under 42 U.S.C. § 1988.

## Count V

### 42 U.S.C. § 1983, Deprivation of Due Process Under the Fourteenth Amendment: *Failure to Train*

112.    Plaintiffs repeat and reallege each and every allegation set forth in preceding paragraphs of this Complaint with the same force and effect as though each was fully set forth herein.

113.    The District failed to adopt or implement a training program to prevent physical harm on Student after the District was on notice of Student's special needs and extensive needs relating to daily living activities such as changing, toileting, and mobility.

114.    The District failed to adopt or implement a training program to respond to medical emergencies or injuries sustained by Student.

115.    The District failed to adopt or implement a program to train any Staff attending to Student in how to manage Student's personal care in order to avoid injuries to Student.

116.    The District had actual notice of the need for training of any person under the District's supervision, who attended to the medical and personal care needs of Student, based on the federal and state statutory schemes governing the education of disabled students and students generally, and the specific recommendations made via Student's evaluations, IEP team meetings, and input from outside medical providers/Parents.

117.    The District was aware of the excessive risk to Student's health and safety occasioned by the aforementioned failures to implement adequate training, and disregarded that risk.

118.    In disregarding the excessive risk to Student's health and safety occasioned by their respective failures to implement adequate training as aforesaid, the District acted intentionally or recklessly, with deliberate indifference to, and wanton disregard of, the health and safety of Student. Their behavior would shock the conscience of any reasonable person.

119.    In their acts and omissions described above, the District acted under color of state law.

120.    As a direct and proximate result of the failures of the District to adopt or implement adequate training as aforesaid, Student has endured and will continue to endure physical pain and psychological and emotional suffering, including, but not limited to, post-traumatic stress, fear, and developmental delays.

121.    As a further direct and proximate result of the training failures of the District as described herein, Student has suffered and will continue to suffer a loss of life's pleasures.

122.    WHEREFORE, Plaintiffs demand judgment against the District as follows:

a.  Awarding Plaintiffs compensatory and consequential damages; and

b.  Awarding Plaintiffs their attorneys' fees, expert fees and costs as permitted under 42 U.S.C. § 1988.


## Count VI
### 42 U.S.C. § 1983, Deprivation of Due Process Under the Fourteenth Amendment:
### *State-Created Danger*

123.    Plaintiffs repeat and reallege each and every allegation set forth in preceding paragraphs of this Complaint with the same force and effect as though each was fully set forth herein.

124.     The District knew of Student's medical condition and physical limitations; knew that Student was helpless to protect himself from physical harm or communicate his distress to persons who could help him; and knew or should have known of the grave risks to Student's health and safety created thereby and by the other facts alleged in this Complaint.

125.     The District had a special relationship with Student that made Student a foreseeable victim of the harm described herein.

126.     The District took affirmative actions that made Student more vulnerable to danger than had they not acted at all.

127.     In their acts and omissions described above, the District acted under color of state law.

128.     By their acts and omissions described above, the District acted intentionally or recklessly, with deliberate indifference to, and wanton disregard of, the health and safety of Student. Their behavior would shock the conscience of any reasonable person.

129.     As a direct and proximate result of the unconstitutional acts of the District in creating a danger to the health and safety of Student, Student has endured and will continue to endure physical pain and psychological and emotional suffering, including, but not limited to, post-traumatic stress, fear, and developmental delays.

130.     As a further direct and proximate result of the unconstitutional acts described above, Student has suffered and will continue to suffer a loss of life's pleasures.

131.     The harms caused by the District were foreseeable consequences of their acts and omissions.

132.     WHEREFORE, Plaintiffs demand judgment against the District as follows:

a.   Awarding Plaintiffs compensatory and consequential damages; and

b.  Awarding Plaintiffs their attorneys' fees and costs as permitted under 42 U.S.C. § 1988.

## **Count VII**
### **Negligence**

133.    Plaintiffs repeat and reallege each and every allegation set forth in preceding paragraphs of this Complaint with the same force and effect as though each was fully set forth herein.

134.    Defendant owed Student a duty of care.

135.    By its acts and omissions described above in this Complaint, the Defendant violated one or more federal or state laws governing the protection of children, the education of a child with a disability or the delivery of health care services to such a child, including:

a.  IDEA;

b.  Section 504;

c.  Title II; and

d.  Wisconsin State Statutes and regulations regarding the reporting of potential child neglect and provision of educational services to disabled children.

136.    The District also had a basic duty to maintain the safety of all children and persons who enter their premises, regardless of disability status.

137.    The District by its acts and omissions hereinabove described, failed to perform their duty of care to Student.

138.    As a direct, foreseeable, and proximate cause of the District's breach of its care as aforesaid, Student suffered demonstrable physical harm and has endured, and will continue to endure, physical pain and psychological and emotional suffering, including, but not limited to, post-traumatic stress, fear, and developmental delays.

139.    As a further direct, foreseeable, and proximate result of Defendant's breach of its duty of care as aforesaid, the Student has suffered and will continue to suffer a loss of life's pleasures.

140.     WHEREFORE, Plaintiffs demand judgment against the Defendants as follows:

    a.   Awarding Plaintiffs compensatory and consequential damages; and

    b.   Awarding Plaintiffs their attorneys' fees and costs.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all matters capable of being so tried.


Respectfully submitted,


By: */s/ Zachary A. Meinen*

    Zachary Meinen
    WI Bar #  1114223
    1437 N. Prospect Ave. Suite 200
    Milwaukee, WI 53201
    zach@meinenlaw.com


**Filed: April 9, 2022**